CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 21 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| VINCENT LAMONT WOODHOUSE, | ) | CASE NO. 7:11CV00462 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| TRACY S. RAY, WARDEN, | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Vincent Lamont Woodhouse, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant, Tracy S. Ray, former warden of Red Onion State Prison, failed to protect him from gang members that he could not identify. Ray filed a motion for summary judgment. Woodhouse responded to Ray's motion and filed his own motion for summary judgment.[1] Upon review of the record, the court finds that Ray's motion must be granted and Woodhouse's motion denied as to all Eighth Amendment claims and that any due process claims must be summarily dismissed under 28 U.S.C. § 1915(e)(2)(b).

I

The relevant facts are these. Virginia Department of Corrections (VDOC) Operating Procedure (OP) 830.6, Offender Keep Separate Management, provides a standardized method of identifying, verifying, and documenting offender enemies and any need for separation of inmates for safety reasons. (ECF No. 23-1, p. 3-8) OP 830.6 includes a procedure by which a prisoner may request to have other inmates designated as his enemies from whom the prisoner should be

---

[1] The court finds both motions for summary judgment to be ripe for disposition. Woodhouse moved for production of documents related to a classification hearing conducted at Powhatan Correctional Center, including enemy summary forms that he completed there which allegedly led to his transfer to Red Onion. Ray filed a motion for protective order and objections to the discovery, arguing that Woodhouse fails to demonstrate why the Powhatan documents are relevant to his claim that Ray failed to protect Woodhouse at Red Onion. The court finds merit to the argument and will sustain Ray's objection and dismiss the motion for protective order as moot.

confined in separate facilities. The enemy procedure requires the prisoner to provide sufficient information about the claimed enemy, including a name and other identifying information, so that prison officials may conduct an investigation to determine the validity of any potential threat the alleged enemy situation poses and to determine the best course of action. Investigators must seek out documented evidence related to the alleged enemy situation, including information received from staff members and reliable offender witnesses (in confidence), institutional incident reports or disciplinary charge records, court records, and jail records. The investigating officer's information and any recommendation for a "keep separate" order must be reviewed for approval by the Institutional Classification Authority (ICA), the facility unit head, and finally, the Central Classification Services (CCS). Once inmates are documented as enemies through this process, they may be housed at the same facility only where "adequate security restrictions prevent them from ever coming in contact with each other except in a closely monitored area." (Id. at p. 6) When an inmate's enemy designation request is denied, if he refuses to leave the segregation unit and return to general population, he may remain in segregation, but he will be charged with a disciplinary offense.

Woodhouse states that he was once a member of a well-known gang, the Bloods, but after he converted to Islam, he renounced gang life. At the time he filed this lawsuit, Woodhouse was housed in the segregation area at Red Onion, where he was on lockdown 23 hours per day for his own protection. Woodhouse believed, however, that he should be moved to another prison with a protective custody unit which imposes less restrictive living conditions for inmates with safety concerns like his. (ECF No. 2, p. 3) Throughout the month of December 2010, Woodhouse advised his Red Onion counselor, Ms. Kegley, that he was no longer a gang member, and that once his defection from the gang became known to other gang members, all

2

Blood members in the state of Virginia would try to kill him unless he was sent to a protective custody unit. Kegley took no action to get Woodhouse reassigned to a protective custody unit.

Dissatisfied with Kegley's inaction, Woodhouse filed an informal complaint on December 31, 2010, explaining his need for protection. In response, an officer provided Woodhouse with an "Enemy Summary Form." Woodhouse filled out the form, listing "All Bloods" as his enemies, and gave it to Kegley for processing on January 20, 2011. Woodhouse also included some nicknames and legal names on an attachment to the form. Kegley allegedly refused to process Woodhouse's form,[2] so he filed a regular grievance on January 27, 2011, complaining that his enemy form had not been processed according to VDOC regulations (ECF No. 2, p. 4). Warden Ray issued the Level 1 response in March 2011, determining the grievance to be unfounded and advising Woodhouse that he needed to list the specific names of his enemies on the Enemy Summary Form. Woodhouse appealed this response, complaining that he had provided Kegley with some Blood members' names and that it was impossible for him to list the names of all Blood members in Virginia. In the April 2011 Level II response, the regional director upheld the Level I finding.

Woodhouse also filed a request form to Kegley in January 2011, asking to be transferred to the "Sussex I Protective Custody Unit" or to be retained in segregation at Red Onion. Kegley advised Woodhouse that he would "have to go through structured living to be transferred." (ECF No. 29, p. 1) Woodhouse states that "structured living" is a general population unit.

In his § 1983 complaint, Woodhouse sues Warden Ray. Specifically, Woodhouse claims that Ray disregarded his 2010-2011 enemy claims and required him to move to a general population area at Red Onion where Woodhouse believed his life would be in danger.

---

[2] Woodhouse alleges that Kegley said, "I'm not processing nothing, you shouldn't have left the gang life." (Compl. 3.)

3

Woodhouse asserts that Ray's actions violate prison policy and deprive him of a safe living environment. Woodhouse states that if Kegley and Ray properly processed the enemy summary form, Woodhouse would be eligible for transfer to "protective custody" housing.[3]

In response to Woodhouse's claim, Red Onion officials reviewed records and found no documentation of any enemy forms filed by Woodhouse in December 2010. (ECF No. 23-1, p. 2) Officials found one enemy form completed by Woodhouse on July 26, 2009, on which he stated that his enemies were "All Bloods." (ECF No. 23-1, p. 8) This request could not be processed, because Woodhouse failed to list any specific names or other information identifying individuals as his enemies, as necessary for officials to complete the type of investigation necessary to address an enemy situation.

## II

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See

---

[3] The VDOC's online inmate locator program indicates that Makdessi is now incarcerated at Wallens Ridge State Prison.

4

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To defeat a supported motion for summary judgment, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (omitting quotation).

The Eighth Amendment obligates prison officials to take reasonable precautions to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 25, 832-33 (1994) (omitting internal quotation marks). A prisoner alleging that prison officials have failed to keep him reasonably safe from other inmates must show that (i) objectively, the prisoner was incarcerated under conditions posing a substantial risk of serious harm and (ii) subjectively, the defendant was deliberately indifferent to those conditions. Id. at 834.

To establish that the risk of exposure to future harm violates the Eighth Amendment, the risk must be "sure or very likely to cause serious illness and needless suffering" and give rise to "sufficiently imminent dangers." Helling v. McKinney, 509 U.S. 25, 33, 34-35 (1993). "[T]here must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" Baze v. Rees, 553 U.S. 35, 50 (2008) (quoting Farmer, 511 U.S. at 842, 846, and 847 n.9)).

A prisoner must also demonstrate that, subjectively, the prison official had a "sufficiently culpable state of mind," the deliberate indifference requirement. Farmer, 511 U.S. at 834. A prison official demonstrates deliberate indifference if he knows of an excessive risk to inmate health or safety and disregards or fails to respond reasonably to that risk. Id. at 844-45.

5

Woodhouse fails to forecast evidence on which he could persuade a jury that he was subject to a substantial risk of serious harm at Red Onion in December 2010 and the early months of 2011. Woodhouse offers no facts to support his bald assertion that all members of the Bloods gang would try to harm him as a defector from the gang. He does not allege that any individual from the Bloods organization attempted or verbally threatened to cause him physical harm, at Red Onion or elsewhere. Moreover, Woodhouse states that officials transferred him to Red Onion for his protection. In the segregation unit there, he was separated from other inmates at all times and left his cell for only one hour per day under controlled conditions. His submissions simply fail to offer support for his conclusory statement that his life was in danger at Red Onion at the time in question.

Woodhouse also fails to demonstrate that Ray knew of and disregarded any substantial risk Woodhouse faced during this time period. Ray saw only Woodhouse's informal complaint and grievance, which merely complained that Kegley had refused to process Woodhouse's improperly completed enemy form.[4] These documents did not contain any information about specific gang members who had threatened Woodhouse and did not otherwise place Ray on notice that Woodhouse was at risk of harm from other inmates at Red Onion.

Moreover, Ray's reliance on OP 830.6 as the prescribed procedure for identifying, verifying, and addressing any inmate enemy situation Woodhouse might encounter was a reasonable response to Woodhouse's speculative fears about gang retaliation. Yet, Woodhouse admits that he did not comply with the enemy designation procedures. On the enemy summary

---

[4] To the extent that Woodhouse bases this suit on officials' alleged refusal to process his December 2010 enemy summary form under the provisions of OP 830.6 , his allegations are not actionable under § 1983. Violations of prison operating procedures do not implicate federal due process and are not cognizable in § 1983. Riccio v. County of Fairfax, VA. , 907 F.2d 1459, 1469 (4th Cir. 1990). To the extent that any such claim may arise under state law, such state law claims are not independently actionable under § 1983, the court declines to exercise supplemental jurisdiction over them, pursuant to 28 U.S.C. § 1367(c), and will dismiss them without prejudice.

6

Case 7:11-cv-00462-JCT-RSB   Document 37   Filed 06/21/12   Page 6 of 8   Pageid#: 110

form he prepared in December 2010, as he had done in 2009, Woodhouse listed "All Bloods" as his enemies. This vague designation did not provide officials with sufficient information to conduct the investigation and evaluation of potential threats as required under OP 830.6. Whatever names and nicknames Woodhouse may have given Kegley, Woodhouse did not provide this information to Ray in his grievance and did not properly complete another enemy summary form listing names and providing information about particular enemies on the form, as required under OP 830.6 procedures.

For these reasons, the court finds no genuine issue of material fact in dispute and concludes that Defendant Ray is entitled to summary judgment as a matter of law as to Woodhouse's Eighth Amendment claim that Ray failed to protect him.[5]

### III

Finally, Woodhouse complains that Ray endangered his life by "forcing" him to enter the general population. OP 830.6 provides, however, that an inmate whose enemy designation request is denied may remain in segregated confinement if he so chooses, although he will be charged with a disciplinary infraction. To the extent that Woodhouse is claiming that this difficult choice violates his due process rights, he is mistaken.

Woodhouse fails to describe any condition of confinement in segregated confinement at Red Onion that constitutes cruel and unusual punishment. See Allgood v. Morris, 724 F.2d 1098, 1101 (4th Cir. 1984) (holding that deprivations involved by mere placement in segregation does not violate the Eighth Amendment). Moreover, an inmate does not have a constitutional right to be placed in a specific security classification, and custodial classifications do not create any major disruption in a prisoner's environment. Sandin v. Conner, 515 U.S. 472, 486-87

---

[5] Because the court concludes that Ray is entitled to summary judgment on the merits of Woodhouse's Eighth Amendment claim, the court will not address Ray's additional defense of qualified immunity.

7

(1995). To show that a particular type of confinement deprives an inmate of a liberty interest created by state laws regarding custody classifications, that inmate must demonstrate either that confinement conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, or that the confinement conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Woodhouse makes no such showing concerning conditions and/or disciplinary penalties he faced in choosing between remaining in segregation at Red Onion or moving to its structured living unit. Thus, the court summarily dismisses without prejudice any due process claim implicated in Woodhouse's complaint. See 28 U.S.C. § 1915(e)(2)(b) (finding that in civil action filed in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action" is frivolous or malicious or fails to state a claim).

## IV.

For the reasons stated, the court grants Defendant Ray's motion for summary judgment as to Woodhouse's Eighth Amendment claims, denies Woodhouse's motion for summary judgment, and summarily dismisses any due process or state law claims without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1367(c). An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 21st day of June, 2012.

*/s/ James C. Turk*
Senior United States District Judge

8

Case 7:11-cv-00462-JCT-RSB   Document 37   Filed 06/21/12   Page 8 of 8   Pageid#: 112